STATE of Missouri, Respondent,

v.

Andrew STEVENSON, Appellant.

No. KCD 26984.

Missouri Court of Appeals, Kansas City District.

May 5, 1975.

Willard B. Bunch, Public Defender, Philip H. Schwarz, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., PRITCH-ARD, C. J., and TURNAGE, J.

TURNAGE, Judge.

Defendant appeals his conviction of two counts of murder first degree and one count of assault with intent to kill with malice. The jury assessed punishment at life imprisonment on each of the murder counts and ninety-nine years on the assault count.

Since a statement given by the defendant was erroneously admitted into evidence and this case must be reversed, only sufficient facts to place the statement in its proper setting will be narrated.

The day after two teenaged boys were killed and one seriously wounded while they were sitting in a parked automobile, the defendant was arrested and charged with these crimes. He was confined in the Jackson County Jail after having been given his Miranda warning. On the following day, Detectives VanBuskirk and Smith of the Kansas City Police Department went to the county jail for the purpose of interrogating the defendant. The defendant was taken by the two detectives to a small room where VanBuskirk asked the defendant to sign a waiver of his rights following the Miranda format. The defendant stated he had signed the same form on the previous day, but VanBuskirk requested he sign another since the previous one had not been signed in the presence of VanBuskirk.

VanBuskirk testified in a pre-trial motion to suppress the statement given by defendant to the two detectives that defendant for the first fifteen or twenty minutes of the interrogation denied any participation in the crimes and stated he had been at home at the time in question. VanBuskirk further stated he told the defendant during this time he had statements from two men who were with defendant at the time of the crimes and these two men had both stated the defendant was the one who had done the shooting. The defendant then admitted knowing the other two men and to being with them on the night of the crimes. At this time the defendant commented he was just a victim of circumstances and stated he did not want to say anything until he had talked with an attorney. VanBuskirk then inquired if he wanted to call an attorney and defendant said he did not. VanBuskirk then inquired if he wanted him to call an attorney and the defendant again replied he did not.

VanBuskirk further testified the defendant next asked him if it would make any difference if he made a statement, and he told the defendant he would still be charged with two counts of murder and possibly three if the third person died. VanBuskirk further informed him he had not been able to establish a motive for the shooting, and the other two men who had implicated the defendant could give no reason.

VanBuskirk further testified the conversation thereupon stopped for about two minutes and all three parties remained silent. He stated the defendant was sitting in a chair with his head down in a dejected state. VanBuskirk stated on cross-examination that during the two minute pause he did not give the defendant any impression he was going to cease talking with him or break off the conversation. VanBuskirk then stated the defendant resumed the conversation by again stating he was just a victim of circumstances and then began to

relate the details of how he shot the three boys.

Defendant asserts the statement given by him after he told the detectives he wished to remain silent and to consult an attorney violated his rights as enunciated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In *Miranda* the court stated at pages 473, 474, 86 S.Ct. at page 1627:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent."

The court in *Miranda* further held if an interrogation continues without the presence of an attorney and a statement is taken, the State has a heavy burden to demonstrate the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to counsel. The court further stated at page 475, 86 S.Ct. at page 1628:

"Presuming waiver from a silent record is impermissible. The record must show, or

there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not a waiver."

In the case at bar, the State's evidence through Detective VanBuskirk shows the defendant was informed of his rights and signed a written waiver of his right to remain silent and his right to have counsel. This same evidence further shows that prior to the defendant making any statements which fully incriminated him in the commission of these crimes, he stated he wanted to remain silent and desired to talk with an attorney. Under the holding in Miranda, the officers had no choice, once the defendant chose to exercise his rights, but to honor the request of the defendant to remain silent and to see that he was able to consult with an attorney. The alternative to such procedure would be for the defendant to fully waive again his right to remain silent and his right to consult with counsel.

■ It is clear from *Miranda* that any statement taken after the defendant exercised his right to remain silent or to consult with counsel, is the product of compulsion and, therefore, inadmissible, absent the proof necessary to show a waiver. The crucial question then emerges: Did defendant waive his right to remain silent or to counsel after his election to exercise such rights? The record is silent as to any waiver made by the defendant after he stated he wanted to exercise his constitutional rights. In fact, the record affirmatively shows the officers not only failed to respect defendant's exercise of his rights, but gave him no ground to believe they were going to break off the interrogation. The only inference to be drawn from VanBuskirk's testimony is that the officers would have stayed in the room with the defendant for an indeterminate length of time, even after his expressed desire to remain silent and consult an attorney.

■ The compulsion referred to in *Miranda* is present here and operated on the

defendant in such a way that he made a statement, even after expressing the desire to remain silent. It requires little imagination to perceive this compulsion. The defendant is in jail, alone, and in the presence of two officers. They have already told him the two men who were with him have stated he was the one who did the shooting. The defendant thus is in the position of being accused of two murders and an assault which could result in a third murder charge. He expressed a desire to remain silent and to consult an attorney but the officers remained in the room with him and simply waited for something to happen. The impact of this situation on the defendant would of necessity be overwhelming. There is small wonder his statement followed.

Under these circumstances it cannot be said the defendant in any manner waived his right to remain silent and consult counsel after he expressed the desire to exercise these rights. This made the statement given by him the product of compulsion and its admission in evidence was, therefore, improper.

■ In seeking to justify the admission of defendant's statement, the State argues the officers did in fact break off the interrogation by failing to ask the defendant any more questions until the defendant was the first to speak. However, as noted in *Miranda, supra,* it is not only necessary for the officers to cease the interrogation, but any statement taken after the defendant invokes his constitutional rights is invalid, absent a positive showing of a waiver thereafter. As shown above, the State did not show any waiver on the part of the defendant after his statement invoking his constitutional rights, so the mere fact the officers did not ask any more questions until the defendant began to speak does not comply with the rule announced in *Miranda.* The officers were under an affirmative duty to

break off the interrogation completely, and that to be accomplished not only by refraining from asking further questions, but by leaving the defendant and removing at least the subtle compulsion of their presence. This is required by *Miranda* and nothing less will assure the defendant the full protection of his constitutional rights.

The State next relies upon United States v. Scogin, 459 F.2d 182 (8th Cir. 1972). In that case the federal agent called on the defendant at her home and stated he wanted to ask her some questions. The defendant's father was present and the defendant attempted to call an attorney but could not reach him. After being warned of her rights, the defendant made a statement to the officer. The court specifically found this interrogation was non-custodial, the defendant waived her rights, and for that reason *Miranda* did not apply. That case does not aid the State nor does it make the statement in this case admissible.

For the reasons heretofore stated, the State did not carry its burden to show the statement was voluntary and given after defendant knowingly and intelligently waived his constitutional rights. It follows such statement should not have been received in evidence.

■ The defendant has filed a "supplemental brief" in which he raises a question concerning the constitutionality of filing these charges against him in multiple counts under Rule 24.04, V.A.M.R., which he claims deprived him of a chance of having his sentences run concurrently. This point was not raised in the trial court nor preserved in the motion for a new trial and, therefore, is not before this court for review. State v. Schuh, 497 S.W.2d 136 (Mo. 1973). However, for the benefit of all concerned in view of the remand, it can be observed that defendant's contentions have

been fully answered in State v. Neal, 514 S.W.2d 544 (Mo. banc 1974).

The judgment is reversed and the cause is remanded for a new trial.

All concur.