STATE of Missouri, Respondent,

v.

Bradford R. JONES, Appellant.

No. KCD 28583.

Missouri Court of Appeals,
Kansas City District.

Aug. 29, 1977.

As Modified On Court's Own Motion
Oct. 11, 1977.

Motion for Rehearing and/or Transfer
Denied Oct. 12, 1977.

Application to Transfer Denied
Nov. 14, 1977.

---

See also Mo.App., 558 S.W.2d 242; 558 S.W.2d 246.

Roy W. Brown, John A. Wilson, Kansas City, for appellant.

John C. Danforth, Atty. Gen., J. Michael Davis, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and WEL-BORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

A jury in the Jackson County Circuit Court found Bradford R. Jones guilty of robbery in the first degree with a deadly weapon and assessed his punishment at seven years' imprisonment. After his motion for new trial was overruled, Jones appealed.

On February 23, 1975, at around 10:30 A.M., two men wearing caps pulled well down on their heads and bandanas covering the lower part of their faces, entered the Revco Drug Store at 103rd and State Line in Kansas City, Missouri. One of the men stuck a gun in the face of James T. White, a Revco employee standing near the store checkout counter, and told White: "This is a robbery, get down on the floor." White complied and the robber emptied the cash register drawers. · White and the robber went to the rear of the store where the second robber had gone after entering the store. There the second robber had encountered Joseph G. Trabon, the pharmacist at the store, put a gun in his face and demanded to know where the narcotics were. Trabon opened the case containing narcotics and threw the key on the floor as directed by the robber. White and the first robber reached the rear of the store about that time. White was ordered to lay on the floor and did so. The robbers took "some stuff out of the narcotics cabinets," a box of insulin and syringes and also money in a cash register and the change drawer. The robbers then left and police were called to the scene. Some $400 to $600 was missing from the store.

White described the first robber as 5'7" or 5'8" tall and weighing around 150 pounds. He said the second robber who went to the rear of the store was somewhat larger than the first. Trabon described the man who accosted him as 5'8" or 5'9" tall, weighing 160 to 170 pounds. Neither could describe facial characteristics of the robbers except that both were white males.

At around 5:00 P.M., March 28, 1975, Gerald Wayne Miller, his wife, Margie, and appellant Bradford R. Jones were arrested by Kansas City police at Miller's residence. They were taken to police headquarters.

Under police questioning, Miller admitted numerous robberies in Missouri and Kansas, including the Revco robbery, in which he implicated Jones. Typewritten copies, one relating to Missouri offenses and one to the Kansas crimes, of Miller's statement were prepared around 4:00 A.M., March 29.

Detective VanBuskirk of the Kansas City Police Department, who had participated in the interrogation of Miller, took Jones to an interrogation room at police headquarters at 7:10 A.M., March 29. Jones was given a written Miranda warning form which he read and signed. VanBuskirk began an interrogation in the course of which he mentioned that Miller had made a statement. Jones asked to read Miller's statement and VanBuskirk permitted him to do so. The statement included information about the Revco robbery. After he read the statement, Jones asked to see Miller, but the request was denied. Jones told VanBuskirk that he wanted to make a statement, but that he wanted to call his lawyer first. Jones was permitted to call his mother and he asked her to have his attorney, Roy Brown, call him. A short time later, at 9:05 A.M., Brown called and was permitted to talk to Jones. After Brown and Jones had talked, Jones handed the telephone to VanBuskirk and told him that Brown wanted to speak to him. Brown told VanBuskirk that he did not want his client to make any kind of a statement.

After the conversation with Brown ended, VanBuskirk told Jones: "Your attorney don't want you to say anything. * * * I will take you back upstairs." At that time and without further interrogation by VanBuskirk, Jones looked at the Miller statements lying on the desk and said: "What Jerry told you is true."

Jones was indicted for the Revco robbery. Prior to trial he filed a motion to suppress the use in evidence of any oral statement allegedly made by the defendant because they "were made without defendant being properly advised of his rights and the presence of his attorney." The motion also sought suppression of evidence seized at the

time of defendant's arrest on the grounds that his arrest was without authority.

A hearing was held on the motion. All of the evidence was directed toward the suppression of the oral statement to VanBuskirk. Appellant denied that he made the statement. VanBuskirk testified that he did. The trial court found that defendant "knowingly, understandingly, and voluntarily, made the statement to the effect, 'What Jerry told you is true.'" The court further found that, although defendant was suffering from withdrawal symptoms at the time of the police interrogation, the evidence showed that he was not confused and that he had no "observable mental instability," and that he was "physically and mentally competent" at the time of the statement.

The court further found that, although defendant's arrest was illegal, "the statement was not the fruit of an illegal arrest." The court stated that it "does note and give weight to the absence of outrageous police conduct, the time elapsed from arrest to the making of the statement, and the presence of intervening circumstances.

"The intervening circumstances include the non-talismanic Miranda warning, opportunity to eat, relatively relaxed discussion, defendant's personal willingness to make a statement, defendant's call to his mother, the attorney's call to both defendant and the detective, the termination of the interview, and the making of the statement without a question requiring response. All these intervening circumstances attenuated the taint of the arrest."

At Jones' trial, the Revco employees, White and Trabon, testified concerning the robbery, but neither could identify Jones. Miller testified in detail to the planning and execution of the robbery. He said that he was the man who stopped at the front of the store and Jones the man who first went to the rear. VanBuskirk testified over renewed objection to the remark of Jones and portions of Miller's statement, dealing with the Revco offense, were placed in evidence. No evidence was offered by the defendant.

The jury returned a verdict of guilty. After defendant's motion for new trial was overruled, the court entered judgment and sentence to seven years' imprisonment in accordance with the jury verdict.

On this appeal, the first point of appellant is that the trial court erred in failing to suppress the use in evidence of his alleged statement to VanBuskirk—"What Jerry told you is true." Appellant's attack on the trial court's ruling is on three grounds:

1. That the court erroneously found that the statement was not the fruit of an illegal arrest.

2. That the statement was the product of illegal interrogation, made, as it was according to the state's evidence, after Jones had indicated his desire to remain silent.

3. That the statement was not knowingly and voluntarily made because appellant was suffering from narcotics withdrawal symptoms at the time.

It might be questioned whether or not the motion to suppress encompassed these claims, but the trial court did pass upon them and the state makes no contention otherwise except with respect to the third question. Since the questions will all eventually have to be resolved, they will all be considered as if properly presented.

■ Dealing with the third question first, Detective VanBuskirk testified that he observed withdrawal symptoms while interrogating appellant. "* * * [H]is whole body would just jerk." On one or two occasions he asked to go to the bathroom because he was sick at his stomach and VanBuskirk took him to the bathroom. VanBuskirk asked him about his last "fix" and was told that it was either earlier that day or the day before. According to VanBuskirk, appellant kept "playing down" his withdrawal, saying that "everything was okay." VanBuskirk described appellant as "very sharp mentally" during the questioning, fully aware of what was going on.

According to Jones, he was in a state of withdrawal, had "cold shivers," nausea and thirstiness. In response to his counsel's inquiry: "Being in that condition, tell the

Court whether or not you were fully cognizant of everything that was going on around you?" Jones said: "No, I don't think I was." He stated that it had been at least 36 hours since he "had had anything."

On the record this court cannot say that the trial court's resolution of the issue was erroneous. The trial court considered the presence of withdrawal symptoms, but concluded that, based on evidence as to appellant's mental condition, his physical condition did not preclude his making a statement which was the "result of a rational intellect and a free will * * *." *State v. Thomas,* 522 S.W.2d 74, 76[1–3] (Mo.App. 1975). The case of *United States v. Monroe,* 397 F.Supp. 726 (D.C.1975), relied upon by appellant, does not require that, as a matter of law, a statement made under circumstances here involved must be held involuntary.

■ As for the illegal interrogation, the complaint is that the statement was exacted from appellant after he had exercised his right to remain silent. The argument ignores the fact that the statement was not the product of interrogation but was volunteered after VanBuskirk had informed appellant that his right to remain silent would be respected and that the interrogation was at an end. Such circumstances distinguish this case from that of *State v. Stevenson,* 523 S.W.2d 349 (Mo.App.1975), relied upon by appellant. In *Stevenson,* the defendant did invoke his right to remain silent but the officer did not indicate that the interrogation would cease. The court in that case noted that "* * * the officers not only failed to respect defendant's exercise of his rights, but gave him no ground to believe they were going to break off the interrogation. The only inference to be drawn from VanBuskirk's testimony is that the officers would have stayed in the room with the defendant for an indeterminate length of time, even after his expressed desire to remain silent and consult an attorney." 523 S.W.2d 351.

In this case, after the conversation with the attorney, VanBuskirk told appellant that the interview was ended and that he would be returned to detention. The circumstances of this case do not involve a "compelling influence" (*Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) which destroyed the voluntary character of appellant's remark. See *United States v. Cook,* 530 F.2d 145, 152–153[10] (7th Cir. 1975).

■ Appellant's first complaint about the admissibility of his statement is bottomed upon the decisions in *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Those cases require that, when a statement of a defendant follows his illegal arrest, its use in evidence against him depends not only upon satisfaction of safeguards designed to protect the Fifth Amendment privilege against self-incrimination, but also it is required that the statement be "sufficiently an act of free will to purge the primary taint of the unlawful invasion" (*Wong Sun v. United States,* 371 U.S. 471 at 486, 83 S.Ct. 407 at 416) of the privilege against illegal arrest as guaranteed by the Fourth Amendment, applicable to the states through the Fourteenth Amendment (*Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)).

In this case the trial court enumerated the factors which it concluded had attenuated the taint of the illegal arrest. Those factors were sufficient to support its conclusion that the appellant's volunteered statement was "an act of free will" which rendered it admissible in evidence. *State v. Johnson,* 530 S.W.2d 690, 692–694[1] (Mo. banc 1975). See *Commonwealth v. Fielding,* 353 N.E.2d 719 (Mass.1976); *Muetze v. State,* 73 Wisc.2d 117, 243 N.W.2d 393, 399–401[13] (1976).

It is therefore concluded that appellant's claim of error based upon the trial court's failure to suppress the use in evidence of his oral statement to Detective VanBuskirk is without merit.

■ Appellant next contends that the trial court erred in admitting into evidence over his objections testimony of numerous

crimes other than the one with which he was charged and for which he was tried.

The charge against appellant was based on the taking by force and violence of $400. Appellant complains that the state was permitted to introduce testimony pertaining to the theft of narcotics, the possession and use of narcotics, the theft of an automobile and numerous other offenses committed by Miller.

The state's witnesses White, Trabon and Miller all testified concerning the taking of narcotics from the Revco store, in addition to the money. Appellant's objections to such testimony was properly overruled because it related to a continuous transaction which was part of the offense charged. *State v. Fox,* 510 S.W.2d 832, 838[5] (Mo. App.1974); *State v. Cox,* 508 S.W.2d 716, 723[8] (Mo.App.1974); *State v. Morris,* 523 S.W.2d 329, 331[4, 5] [6] (Mo.App.1975).

■ In the examination of Miller, the prosecutor asked him whether Jones was a user of heroin. Miller responded, without objection, that he was. Miller was then asked whether he used heroin. He replied that he did. Then defense counsel objected and asked the court to direct the jury to disregard the statement and for a mistrial. The requests were overruled. There are several answers to appellant's claim of error in the ruling. In the first place, no objection was made to either the questions or answers regarding appellant's use of heroin. The questions propounded to Miller with regard to each of them made apparent the nature of the evidence sought, but the questions were not objected to. The motion to strike the answers thereafter came too late to provide a basis for error. *State v. Drake,* 298 S.W.2d 374, 376[4, 5] (Mo.1957); *State v. Peebles,* 337 Mo. 973, 87 S.W.2d 167, 168–169[4, 5] (1935). Finally, the trial court's conclusion that in any event the evidence was admissible under the motive exception to the evidence of other crimes rule (*State v. Rand,* 496 S.W.2d 30, 32[1, 2] (Mo.App.1973)) has not been shown to have been erroneous.

■ Miller testified over objection to the theft of an automobile en route to the Revco store in which the two drove to the store and which they used in their departure from the store. This evidence was admissible as part of the common scheme or plan for the robbery. *State v. Boyer,* 476 S.W.2d 613 (Mo.1972); *State v. Johnson,* 483 S.W.2d 65, 68[6] (Mo.1972).

■ In the course of examining Miller, the prosecution, without objection, elicited that Miller had pleaded guilty to robbery in Kansas, to two robbery charges in Missouri and that the state had promised to drop other robbery charges, a car theft charge and two charges of assault. At the conclusion of the testimony, defense counsel moved to strike the testimony on the grounds that, since Miller had testified that he had seen appellant daily for two months before the Revco robbery, the jury would assume that appellant was also involved in the other offenses for which Miller was charged and therefore Miller's testimony brought in evidence of other offenses by appellant. However, except possibly for the car theft, referred to above, there was no testimony linking appellant with any of the other offenses with which Miller had been charged. There was no testimony that the offenses occurred during the two or three-month period in which Miller and appellant saw each other daily. There being no evidentiary basis for the assumption upon which the objection was based, the overruling of the belated motion to strike was not error.

■ Appellant next contends that the trial court erred in permitting VanBuskirk to testify concerning the statement taken from Miller and in permitting the state to offer in evidence the portion of Miller's statement which related to the Revco robbery and implicated appellant. The appellant here argues that the trial court's overruling his objection to such evidence was erroneous because the statements "were self-serving, hearsay and a prejudicial attempt to use an extrajudicial statement to improperly bolster said witness' testimony."

The witness whose testimony was sought to be bolstered, according to appellant, was Miller.

Appellant relies on the rule, laid down in *State v. Kinne,* 372 S.W.2d 62 (Mo.1963), and *State v. Rippee,* 512 S.W.2d 235 (Mo. App.1974), which prohibits the use of an extrajudicial statement by a party not a witness as substantive evidence of the facts to which the statement relates. That is not the rule applicable here. VanBuskirk testified that appellant read the statement of Miller and later said: "What Jerry (Miller) told you is true." This was an "adoptive admission" which permitted the state to introduce the relevant portions of the statement originally made by another. *State v. Cooley,* 221 S.W.2d 480, 487[20] (Mo.1949); *State v. Roulette,* 451 S.W.2d 336 (Mo.1970). The trial court's ruling was not erroneous.

▪ Appellant next complains of the failure of the trial court to grant a mistrial because, in closing argument, the prosecutor said: "No witness or evidence was presented to refute the state's case." Appellant contends that this was a comment on his failure to testify, in violation of federal and state constitutional provisions and § 546.270, RSMo 1969.

In support of his assignment of error, appellant relies upon the dissenting opinion of Judge Seiler in the case of *State v. Hutchinson,* 458 S.W.2d 553, 559 (Mo. banc 1970). This court, however, is obliged to follow the view of the majority of the Supreme Court in that case. Under the majority decision in that case, the failure of the trial court to grant a mistrial on the grounds here urged was not error. As in *Hutchinson,* there was not in this case a "direct and certain reference to failure of appellant to testify." 458 S.W.2d at 556[4]. See *State v. Overall,* 519 S.W.2d 549 (Mo. App.1975).

▪ Appellant next complains that the trial court erred in preventing his attorney in his argument from arguing the consequences of an illegal arrest as it might affect the voluntariness of the appellant's statement to VanBuskirk. In his argument, defense counsel stated: " * * * I can suggest to you that the evidence shows that the arrest of all three of these parties was a total illegal arrest." The prosecutor objected to the argument on the grounds that there was no evidence before the jury to support that argument. Defense counsel responded that Miller had testified that he was not shown a warrant prior to his arrest. The trial court ruled that argument could be made on that basis but that defense counsel could not argue further that the arrest was illegal. In this court, appellant contends that the trial court's ruling prevented him from relying upon the illegality of the arrest as a matter for consideration with respect to the voluntariness of his statement.

The objection is without merit for several reasons. In the first place, there was no evidence before the jury as to the basis for appellant's arrest. Appellant has made no effort to point out any evidence which would have supported the attempted argument. He was permitted to argue the effect of a warrantless arrest and did so. The trial court's ruling on this issue was not erroneous.

▪ Appellant next complains of the trial court's remark in the course of voir dire examination of the jury panel.

In the voir dire, defense counsel inquired whether members of the panel had been victims of crime. Seven had responded that they had but said that their experience would not prevent their giving appellant a fair trial. The eighth juror who responded affirmatively had had several criminal offenses involving him or his business and he was excused when he said that he felt that his experiences might cause him to be prejudiced against a person charged with a crime.

At that time the court explained to the jury that "there is a good deal of difference between being against crime, and being able to give a fair and impartial trial to someone who is charged with a crime. * * But a general feeling of being opposed to crime is not inconsistent with being able to

give someone who is charged with a crime a fair and impartial trial."

Defense counsel objected that the court's remarks were "outside the Court's permissive (sic) oral instructions" and he moved for discharge of the panel. The motion was overruled. Defense counsel continued this line of questioning. Ten more panel members responded that they or persons close to them had been victims of crime. Nine said that the experience would not prejudice them. A tenth said his would and he was excused.

Appellant here contends that the trial court erred in entering into voir dire with his remarks which were prejudicial to the defendant. He really offers only his conclusion to that effect, unsupported by any authority. He does suggest that MAI–CR 1.02 is the only oral instruction which the court may give the jury panel. No such limitation appears in the comments on use under this instruction. The remarks here have not been shown to have constituted an abuse of the discretionary authority of the trial judge in guiding voir dire examination. *State v. Scott*, 515 S.W.2d 524 (Mo.1974).

■ Appellant has offered neither argument nor authority in support of his contention that the trial court erred in failing to strike for cause panel members who stated that they had been victims of criminal acts. His assertion that he had to use eight preemptory challenges to strike panel members "who had stated that they were victims of a crime but after having heard the Court's remarks stated that they were not prejudiced by the fact that they were the victim of a crime" is not supported by the record. Six of the persons named had been questioned and made such response prior to the trial court's remarks.

■ Appellant contends that his motion for a directed verdict of acquittal should have been sustained. He argues that the state failed to prove his connection with the robbery because Miller's testimony was not corroborated, the description of the Revco employees of the man alleged to have been appellant was totally different from appellant's physical characteristics and those persons could not identify appellant as one of the robbers.

Appellant's argument on this score is based primarily upon the claim that Miller's statement and testimony were not worthy of belief. He points out that Miller made a deal with the state to testify in return for a promise of leniency and that Miller knew that Jones and Miller's wife were "carrying on sexual relations." Appellant argues that he should not, in those circumstances, be convicted on the testimony of Miller alone. Appellant ignores completely the state's evidence that he agreed that what Miller said in his statement was correct. That evidence is also entitled to consideration and considering that with the other evidence it is obvious that the state made a submissible case against the appellant. Miller's credibility was for the jury and is not determinable as a question of law. *State v. Morris*, 518 S.W.2d 79, 81–82[3–5] (Mo.App.1974).

Appellant argues that, although the evidence showed that he was 6′ tall and weighed about 200 pounds at the time of the robbery, the victim described the robber, who, according to Miller, was appellant, as 5′8″ to 5′9″ tall, weighing around 155 pounds. The witness's testimony was based upon estimates made under circumstances not conducive to accuracy. The testimony did not give rise to such an inconsistency in the state's evidence as to destroy the submissibility of the case. *State v. Williams*, 515 S.W.2d 544, 549[5] (Mo.1974).

■ The jury retired to consider its verdict at 4:30 P.M. At 7:30, they returned to the courtroom and advised the court that they stood 8 to 4. The court stated that he would give an additional instruction. Defense counsel objected and asked for a mistrial. The objection was overruled and the court gave the "hammer" instruction, MAI–CR 1.10. At 9:30, the jury returned to the courtroom and the foreman announced that they stood 10 to 2 and stated that he had hope of further progress. The jury resumed its deliberation and at 11:05 P.M. a verdict of guilty was returned.

Appellant here contends that the trial court erred in overruling his request for a mistrial and contends that the circumstances show that the final verdict was a compromise; the result of undue coercion by the court's giving of the "hammer" instruction. The giving of such instruction and refusal to declare a mistrial were matters for the trial court's discretion. The circumstances here do not demonstrate an abuse of that discretion. *State v. Barron*, 465 S.W.2d 523, 530[14, 15] (Mo.1971); *State v. Doepke*, 536 S.W.2d 950, 951[6] (Mo.App. 1976). Appellant's speculation that the jury resorted to compromise as a result of the giving of the instruction is nothing more than speculation.

■ Appellant finally faults the verdict returned by the jury because it failed to designate the place of imprisonment. The form of verdict followed that found in MAI–CR 2.86(a). See *State v. Franklin*, 379 S.W.2d 526, 527–528[4, 5] (Mo.1964).

Judgment affirmed.

All concur.

See also Mo.App., 558 S.W.2d 233; 558 S.W.2d 246.