**UNITED STATES of America,
Appellant,**

v.

**Thomas Albert KAMPBELL, Appellee.**

No. 78–1056.

United States Court of Appeals,
Eighth Circuit.

Submitted April 10, 1978.

Decided April 20, 1978.

W. H. Dillahunty, U. S. Atty. and Kenneth F. Stoll, Asst. U. S. Atty., Little Rock, Ark., for appellant.

William R. Wilson, Jr., Little Rock, Ark., for appellee.

Before BRIGHT and ROSS, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

PER CURIAM.

The United States appeals a district court order suppressing incriminating evidence obtained against the appellee in a consent search of the appellee's home. We affirm the district court's suppression order.

Appellee Kampbell, formerly a postal employee, was investigated, and later indicted, for misappropriation and theft of Postal Service property. During the course of the investigation Kampbell was interviewed by two Postal Service Inspectors; Kampbell was advised of his *Miranda* rights, and when asked if he would consent to a search of his home he replied that he would not. During a break in the interview Postal Service Inspector Harris went to the United States Attorney's office to discuss the possibility of applying for a search warrant of the premises; permission for the application was given by a member of that office.

* The Honorable TALBOT SMITH, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

Inspector Harris thereafter gave Kampbell his explanation of the difference in the scope and allowable intrusion of the premises under a search conducted pursuant to a *warrant* and a *consent* search. Harris explained as follows:

> I told him if we felt that there were items concealed in his walls, that the search warrant gave us the authority to tear the paneling off the walls. Mr. Kampbell responded that he didn't want his house torn up. I said, "I won't tear up your house. We want the Post Office equipment."
>
> I explained to him that was the power of a search warrant; whereas, the powers of a consent to search only gave us the authority to look into the areas he authorized us. We could not ramsack [sic] his house on a consent to search. * * *

Kampbell also testified that the inspector told him that "with the court order search warrant he [the inspector] could tear up Jack." The government, however, points to a cross-examination statement by Kampbell in which he remembers Harris telling him "we're [the postal inspectors] not going to tear your house up."

About an hour after Harris gave his explanation, and while he was drafting the warrant, Kampbell changed his previous decision and gave his consent to the search.

The sole issue concerns Kampbell's allegation that his consent to search was coerced by the threat that his home could be ransacked under a search warrant, and the implication that this would be done.

The district court considered the factual circumstances concerning what was said to be chiefly undisputed, and "what we are really concerned with, I guess, is the effect of it upon [Kampbell] * * *."

After listening to the testimony, and hearing Kampbell's statement that he gave his consent because he did not want his home ransacked, the trial judge came to the following conclusion:

> [T]he truth of it is that it was a threatening communication in this sense: It was not only, in effect, that we're telling you if we have to get a search warrant, we can tear your place apart, but the implication that was intended to be conveyed, I think, was, "By God, we will."
>
> So we have a threat and that was the way it was interpreted by Mr. Kampbell. He interpreted the expression of carefully describing the differences. Why describe the difference? Why go into all this if there was not some purpose and I think the purpose was to create the alternative of wanting to consent and go ahead and consent. * * *

The court considered the question of the voluntariness of Kampbell's consent to be a close one, as we do; we cannot say that the trial court was clearly erroneous on the record before us.

The government, in seeking to rely on Kampbell's consent, "has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). It must be demonstrated "that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Schneckloth v. Bustamonte,* 412 U.S. 218, 248, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973). Whether or not consent is voluntary "is a question of fact to be determined from all the circumstances * * *." *Id.* at 248–49, 93 S.Ct. at 2059. We have reviewed the record, particularly those statements quoted previously, and others which demonstrate that Harris attempted at length to persuade Kampbell to "tell the truth."[1] Considering all the facts and cir-

---

1. At pages 14 and 15 of Exhibit B, the transcript of the recorded questioning of Mr. Kampbell by Inspector Harris:

   HARRIS: And we are going to find other items at your home that are Post Office-owned items. Now you can sit there and act like you don't know what's going on and like you're all innocence and everything else but I am going to talk to a U.S. Attorney and he is most likely going to prosecute you for theft of government property, postal-owned property.

   Now you can say what you want to, there's two sides to every story. The side you told me doesn't fit, so you can take it anywhere you want to or any way you want to.

cumstances, and the trial judge's superior opportunity to assess the credibility of the witnesses, we cannot say that there is clear error.

Therefore, the order of the district court suppressing the evidence is affirmed.

\*  \*  \*  \*  \*  \*

Now I don't care whether you tell me another thing or be a man and tell all or just sit there like a knot on a log. It makes me no difference. I don't need any more than what I've got right now  \*  \*  \*.

\*  \*  \* It's one thing to sit and deny any wrongdoing. It's another thing to be a man

and admit that you've made a mistake and you want to clean the record. So it makes no difference to me, Mr. Kampbell. I've been in this business too long.