Timothy PUNGUK, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2287.

Court of Appeals of Alaska.

Dec. 15, 1989.

Michael Dieni, Asst. Public Advocate and Brant McGee, Public Advocate, Anchorage, for appellant.

Virginia Bonnie Lembo, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Timothy Punguk was convicted by a jury of three counts of sexual abuse of a minor in the second degree. He appeals, contending that the superior court erred in finding that he consented to a search of his home and in failing to sever his charges for trial. We affirm.

On May 23, 1987, Alaska State Trooper Thomas Martin travelled to the village of Golovin to investigate reports that several children in the village had been sexually abused. Upon arrival, Martin separately interviewed four young girls; each claimed to have been sexually abused by Timothy Punguk on various recent occasions. Some of the incidents of sexual touching were reported to have occurred in Punguk's home, after Punguk had shown his victims magazines containing photographs of naked women.

Accompanied by Village Public Safety Officer (VPSO) Pat Farrell, Martin went to Punguk's house. He knocked on the door. Punguk told him to come in. When the officers entered, they could see Punguk sitting on his bed in the bedroom. He appeared to be awake and alert. Martin went into the bedroom, explained that he wanted to ask Punguk some questions, and activated his portable tape recorder to record the ensuing interview.

Martin told Punguk that he was not under arrest and did not have to answer any questions. He informed Punguk of the girls' accusations of sexual abuse. Punguk denied the accusations and declined Martin's offer to take a polygraph test. Punguk also declined Martin's request for permission to search his bedroom. However, when Martin told Punguk that, in order to prevent possible destruction of evidence, Punguk would have to accompany him to the public safety building while he telephoned a magistrate for a search warrant, Punguk indicated that he would prefer to give Martin permission to search. Punguk ultimately signed a written consent, authorizing a search.

Martin's search yielded five adult magazines containing photographs of naked women. Before trial, Punguk moved to suppress the magazines, arguing that his consent to the warrantless search was coerced by Martin's threat to remove Punguk from his house and detain him while he obtained a warrant. After an evidentiary hearing, Superior Court Judge Charles Tunley denied the motion to suppress, finding Punguk's consent to have been voluntary.

At trial, the magazines were admitted in evidence by the state to bolster the testimony of the complaining witnesses. On appeal, Punguk argues that the superior court erred in finding that he voluntarily consented to the search and in failing to suppress the magazines.

■ The voluntariness of a consent to search is a question of fact to be determined by the trial court from the totality of the circumstances in each case. *Phillips v. State*, 625 P.2d 816, 817 (Alaska 1980); *Pierce v. State*, 627 P.2d 211, 216 (Alaska App.1981). As with other types of factual findings, a trial court's finding of consent to search must be accepted on appeal unless clearly erroneous. *Brown v. State*, 684 P.2d 874, 880 (Alaska App.1984); *Schikora v. State*, 652 P.2d 473, 476 (Alaska App.1982).

■ In the present case, after hearing the evidence presented at the evidentiary hearing and listening to the recording of Martin's interview with Punguk, Judge Tunley issued a carefully considered decision finding Punguk's consent to be voluntary. Punguk has not shown this finding to be clearly erroneous.

In arguing that the superior court erred, Punguk relies primarily on the contention that Martin's order directing Punguk to accompany him to the public safety building while he applied for a search warrant was coercive and improper. Yet, as Punguk concedes, Martin clearly had probable cause for arrest when he contacted Punguk at his home. Because Martin had probable cause for arrest, he certainly had the authority to secure Punguk's room against possible loss of evidence by removing Punguk and detaining him briefly while he telephoned for issuance of a search warrant. *See, e.g., State v. Spietz*, 531 P.2d 521, 523 (Alaska 1975); *Finch v. State*, 592 P.2d 1196, 1197–98 (Alaska 1979); *Hubert v. State*, 638 P.2d 677, 688 (Alaska App. 1981).[1]

---

1. Punguk acknowledges that, under federal case law interpreting the fourth amendment to the United States Constitution, Martin would not have been precluded from temporarily detaining Punguk in order to secure his house. Punguk nevertheless contends that Alaska's constitution provides greater protection against invasions of privacy. *See, e.g., Ravin v. State*, 537 P.2d 494 (Alaska 1975). Punguk argues that, under the Alaska Constitution, Martin should have been restricted to adopting the least intrusive means of protecting against destruction of the magazines. According to Punguk, Martin had two less intrusive alternatives available: first, to leave Farrell inside the house with Punguk while Martin sought a warrant; second, to evict Punguk from his house without detaining him, stationing Farrell outside to secure the premises against entry. Punguk contends that, in light of these alternatives, Martin could not properly have detained Punguk at the public safety building. Because it was clearly Martin's threat to detain Punguk that precipitated Punguk's consent to search, Punguk maintains that the consent must be deemed to have been coerced.

Even if Alaska's constitution imposed a duty on Martin to adopt the least intrusive alternative in attempting to protect against the destruction of evidence, Punguk's argument is not persuasive. It is far from clear that the option of securing Punguk's home by stationing Farrell in the house with Punguk would realistically have been less intrusive than detaining Punguk brief-

There was nothing inherently coercive or impermissible in informing Punguk that he would have to accompany Martin while Martin applied for a warrant. As recognized by the Washington Court of Appeals under analogous circumstances:

The police were within their rights when they stated they would impound ... [the] house until a search warrant could be secured. Bowing to events about which one may be unhappy does not render a consent involuntary.

*State v. Thorkelson*, 25 Wash.App. 615, 611 P.2d 1278, 1280 (1980). *Accord, United States v. Agosto*, 502 F.2d 612, 614 (9th Cir.1974). *See also Schikora v. State*, 652 P.2d at 477; 3 W. LaFave, *Search and Seizure*, § 8.2(c), at 188 (2d ed.1987).

Here, as the trial court correctly recognized, Martin never purported to actually have a warrant, and he never represented that he was certain to obtain one when he applied. *See, e.g., People v. James*, 19 Cal.3d 99, 137 Cal.Rptr. 447, 561 P.2d 1135, 1140–42 (1977). Nor did Martin threaten that, upon securing a warrant, he would conduct a search that was broader or more intrusive than the consensual search he had requested. *See, e.g., United States v. Kampbell*, 574 F.2d 962 (8th Cir.1978).

Apart from his claim that it was impermissible for Martin to tell him that he would have to go to the public safety building while an application for a search warrant was made, Punguk cites nothing—and we find nothing—particularly coercive or threatening in the circumstances that led him to consent. There is simply no basis here for concluding that the superior court was clearly erroneous in denying Punguk's motion to suppress.

■ Punguk additionally contends that the court erred in failing to sever his charges for trial. Punguk never moved for a severance, however, so the issue must be considered as a matter of plain error. *See*

Alaska R.Crim.P. 47(b). Punguk does not contend that his charges were improperly joined in the first instance. He contends, though, that because the charges were joined on the sole basis that they involved similar offenses, he would have been entitled to a severance as a matter of right had a motion for severance been made. *See Velez v. State*, 762 P.2d 1297, 1305 (Alaska App.1988); *Johnson v. State*, 730 P.2d 175 (Alaska App.1986). Punguk asserts that he was obviously prejudiced by joinder of the charges and contends that any competent counsel would have moved for a severance. Accordingly, he argues that the trial court should have recognized the inherent prejudice of joinder and that it committed plain error in failing to sever the charges *sua sponte*.

A defendant's decision not to move for severance of properly joined charges may be motivated by sound tactical considerations that are not apparent from the record and that could not be known to the trial court. Among factors that might enter into a defendant's decision not to move for severance are imponderables such as the defendant's assessment of the overall chances of success in one trial as opposed to several, the possibility of a more lenient total sentence for a single conviction on multiple counts than for serial convictions on single counts, or simply the desire not to be subjected to more than one trial:

The joint trial of offenses can ... be beneficial to the defendant. A single trial will eliminate the harassment, trauma, expense, and prolonged publicity of multiple trials. A single trial may result in a faster disposition of all cases, and may increase the possibility of concurrent sentences in the event of conviction, and may prevent the application of enhanced sentencing statutes.

2 W. LaFave and J. Israel, *Criminal Procedure*, § 17.1(a), at 354 (1984), quoting

---

ly at the public safety building. *See, e.g., Segura v. United States*, 468 U.S. 796, 809–11, 104 S.Ct. 3380, 3387–89, 82 L.Ed.2d 599 (1984). This is particularly true here because Punguk shared his house with his parents. Furthermore, Judge Tunley carefully considered both of Punguk's proposed less intrusive alternatives and con-

cluded, based on the evidence below, that they were not reasonably available to Martin. There is substantial evidence to support Judge Tunley's finding. On appeal, Punguk has failed to demonstrate how the finding is clearly erroneous.

A.B.A. II *Standards for Criminal Justice* § 13–2.1 commentary at 13.13 (2d ed.1980).

On the present record, it appears possible that Punguk's trial counsel refrained from moving for a severance for sound tactical reasons. Accordingly, there is no basis for finding that the superior court committed plain error in failing to order severance *sua sponte*. *See, e.g., Potts v. State*, 712 P.2d 385, 390 (Alaska App.1985).

The conviction is AFFIRMED.