Ronald J. McBATH, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8570.

Court of Appeals of Alaska.

Feb. 18, 2005.

Rehearing Denied March 22, 2005.

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for the Appellant.

W.H. Hawley Jr., Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

The defendant in this case, Ronald J. McBath, was subjected to an arguably illegal investigative stop. During the course of this stop, the police learned McBath's identity and also learned that there were two pre-existing unserved warrants for his arrest. The police arrested McBath on these warrants and, during a search incident to this arrest, the police discovered that McBath was carrying methamphetamine—a discovery that ultimately led to McBath's conviction for fourth-degree controlled substance misconduct.

In this appeal, McBath argues that the initial investigative stop was illegal and that any evidence discovered as a consequence of that stop must be suppressed. We hold that, regardless of the potential illegality of the investigative stop, the pre-existing arrest warrant was an independent, untainted ground for McBath's arrest. Therefore, the methamphetamine discovered during McBath's arrest was obtained lawfully.

*Underlying facts, and the litigation in the superior court*

Ronald McBath was a passenger in a truck that was stopped for having an expired license plate. The traffic stop evolved into an arrest when the police discovered that the driver of the truck was intoxicated. The police arrested the driver and then made arrangements to have the truck towed away for impoundment.

The officers informed McBath that the driver of the truck was under arrest but that he (McBath) was free to go. In fact, the police offered to get a cab for McBath. But at this juncture, McBath called out to the driver of the truck, asking him if there was anything that McBath should remove from the truck before the vehicle was towed away. The driver told McBath to remove a toolbox and an unopened twelve-pack of beer from the back of the truck.

The police were willing to let McBath remove these items from the truck. However, to forestall any later claim that property was unaccountably missing from the truck, the police asked McBath to tell them his name (so that the police could find him again if any dispute arose concerning the toolbox or its contents).

At first, McBath refused to say what his name was. At length, he told the police his first name, "Ron". When the police pressed McBath for his last name, he finally answered "McGoo". At this point, the officers suspected that McBath was not being truthful with them. Their suspicions intensified when they ran the name "Ron McGoo"

through their computer and found no matching record.

At this point, the police decided to detain McBath until they could find out who he was. They seized McBath and handcuffed him. Soon afterward, McBath divulged his real name. A renewed computer search revealed that there were two outstanding warrants for McBath's arrest. And a search incident to arrest revealed that McBath was carrying methamphetamine—a discovery that led to McBath's indictment and ensuing conviction for fourth-degree controlled substance misconduct.[1]

Following his indictment, McBath asked the superior court to suppress the methamphetamine found on his person. McBath argued that he had been subjected to an unlawful investigative stop.

McBath acknowledged that the police had a valid administrative interest in avoiding, or being able to defend against, any future claim by the driver that the police had lost his property. However, McBath argued that the police had their defense without needing to know McBath's identity—because the police could easily prove (1) that the arrested driver had knowingly entrusted the property to a friend of his (even if the identity of this friend remained unknown), and (2) that the two containers of property (the tool box and the 12–pack of beer) left the scene of the arrest intact.

McBath also argued that, even if the police could validly ask McBath to reveal his identity, the police had no authority to detain him when he declined to furnish this information—because the police wanted this information for an administrative purpose rather than a law enforcement purpose.

The State responded that the police had a valid administrative need to ascertain McBath's identity, and that the investigative stop was justified when McBath refused to disclose this information. But the State also argued, in the alternative, that the outstanding warrants for McBath's arrest constituted an independent, untainted reason to seize McBath and to search his person. The State contended that even if the initial investigative stop was improper, the ensuing discovery of the methamphetamine should be deemed the fruit of the arrest warrants rather than the fruit of the investigative stop.

The superior court adopted both of the State's rationales. Superior Court Judge Mark I. Wood concluded that the police had a valid reason to detain McBath after he declined to furnish his identity. And in the alternative, Judge Wood ruled that even if this investigative stop was improper, the existence of the warrants for McBath's arrest attenuated the taint of that initial illegality and provided an independent basis for searching McBath's person and seizing the methamphetamine he was carrying. On these two bases, Judge Wood denied McBath's suppression motion.

*The issues presented in this appeal*

On appeal, McBath renews both of his attacks on the investigative stop. First, McBath argues that the police had no real need to ascertain his identity. Next, McBath argues that even if the police did have a valid need to ascertain his identity, they had no authority to detain him when he declined to reveal his identity, since this information was being sought for an administrative purpose rather than a law enforcement purpose. Finally, McBath asks us to reject the superior court's alternative rationale—the superior court's conclusion that the outstanding warrants for McBath's arrest provided an independent, untainted justification for searching McBath's person, and that the discovery of the methamphetamine should be deemed the fruit of that search incident to McBath's arrest rather than the fruit of the initial investigative stop.

For the reasons explained here, we agree with the superior court's "attenuation of taint" theory. Even if we assume that the initial investigative stop was improper, the facts of the encounter demonstrate that the methamphetamine found on McBath's person was not the fruit of that investigative stop. The police searched McBath only after they discovered the pre-existing warrants for his arrest, and their search was conducted under

---

1. AS 11.71.040(a).

the authority of those warrants. Under these facts, the pre-existing arrest warrants sufficiently attenuated the connection between the initial investigative stop and the later discovery of the methamphetamine.

Because we reach this conclusion, we need not decide the legality of the initial investigative stop.

*Case law dealing with situations where, during an improper investigative stop or arrest, the police discover an outstanding warrant for the defendant's arrest*

From time to time, courts are confronted with suppression motions involving situations in which the police conduct an illegal investigative stop or arrest and then, during this illegal detention, the police discover the defendant's identity and also discover that there is pre-existing warrant for the defendant's arrest. The question is whether the pre-existing arrest warrant constitutes an independent basis for taking the defendant into custody and searching the defendant's person, thus dissipating the taint from the illegal initial detention.

The leading federal case on this issue is *United States v. Green,* 111 F.3d 515 (7th Cir.1997). In *Green,* the police subjected the defendant and his companions to an illegal traffic stop. During this stop, the police ascertained the identities of Green and his companions, and then the police ran a computer check on their names—a search which revealed that there was an outstanding arrest warrant for one of Green's companions. In conducting this arrest, the police searched the car and discovered cocaine and a gun.[2] This evidence later formed the basis of several criminal charges against Green.[3]

Green argued that the evidence found in the car was the tainted fruit of the initial illegal investigative stop. The Seventh Circuit conceded that the evidence against Green would not have been discovered but for the initial illegal stop. However, the court noted that the United States Supreme Court, in defining the scope of the exclusionary rule, has rejected a "but for" test:

> *Wong Sun [v. United States ]*[4] ... [does] not hold that all evidence is "fruit of the poisonous tree" simply because it would not ·have come to light but for the illegal actions of the police.... [E]ven in situations where the exclusionary rule is plainly applicable, [the Supreme Court has] declined to adopt a "per se" or "but for" rule that would make inadmissible any evidence, whether tangible or live-witness testimony, which somehow came to light through a chain of causation that began with an illegal arrest. *United States v. Ceccolini*[5].... Rather, the more apt question in such a case is whether, granting [proof] of the [initial] illegality, the evidence [at issue was derived] by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. *Wong Sun,* 371 U.S. at 488, 83 S.Ct. at 417....

*Green,* 111 F.3d at 520–21 (internal quotations omitted).

The Seventh Circuit then analyzed the facts of Green's case using the three-part analysis adopted by the Supreme Court in *Brown v. Illinois*[6] for determining whether a confession is tainted by a preceding illegal arrest.

> In *Brown v. Illinois,* ... the Supreme Court set forth three factors for determining whether the causal chain has been sufficiently attenuated to dissipate the taint of the illegal conduct: (1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. In the final analysis, however, the question is still whether the evidence came from "the exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary

---

2. *Green,* 111 F.3d at 517, 520.

3. *Id.*

4. 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441, 455 (1963).

5. 435 U.S. 268, 276, 98 S.Ct. 1054, 1060, 55 L.Ed.2d 268 (1978).

6. 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

taint." *Wong Sun,* 371 U.S. at 488, 83 S.Ct. at 417.

*Green,* 111 F.3d at 521.

The Seventh Circuit acknowledged that "only about five minutes elapsed between the illegal stop ... and the search of the car".[7] However, the court noted that this short time span was not dispositive of the question of taint.[8] The court then analyzed the nature and degree of the police illegality; the court concluded that the police had not engaged in "flagrant official misconduct".[9] Finally, the court suggested that a decision suppressing the evidence in Green's case would be inconsistent with the policies underlying the exclusionary rule:

> It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant—in a sense requiring an official call of "Olly, Olly, Oxen Free." Because the arrest is lawful, a search incident to the arrest is also lawful. The lawful arrest of [Green's companion] constituted an intervening circumstance sufficient to dissipate any taint caused by the illegal automobile stop.

*Green,* 111 F.3d at 521.

When the Seventh Circuit decided *Green* in 1997, they declared that there was "no [prior] case law directly on point".[10] This may have been true with regard to federal decisions, but several state courts had already reached the same legal conclusion on analogous facts. See (in chronological order, from 1968 to 1991) the Washington Supreme Court's decision in *State v. Rothenberger,*[11] the Florida Court of Appeals' decision in *State v. Foust,*[12] the Colorado Supreme Court's decision in *People v. Hillyard,*[13] the Missouri Court of Appeals' decision in *State v. Lamaster,*[14] the Nebraska Supreme Court's decision in *State v. Thompson,*[15] the Georgia Court of Appeals' decision in *Ruffin v. State,*[16] and the Texas Court of Appeals' decision in *Reed v. State.*[17]

(See also the Texas Court of Appeals' decision in *Neese v. State:*[18] the court held that, despite an initial illegal stop, the defendant's arrest was legal because of a pre-existing arrest warrant, but the court nevertheless suppressed the disputed evidence because the court concluded that the police had exploited the initial illegality in ways other than simply learning the defendant's identity.)

Moreover, since 1997, several other state courts have adopted this same approach to the issue.

For example, in *State v. Hill,* 725 So.2d 1282 (La.1998), the Louisiana Supreme Court confronted facts similar to the facts presented in McBath's case: The police conducted an illegal investigative stop and, during this stop, they discovered the defendant's name. Using this name, the police ran a computer check and discovered two outstanding warrants for the defendant's arrest. The police then arrested the defendant, conducted a search of his person, and found illegal drugs.[19]

According to the Louisiana court, there was "nothing in the record [to indicate] that any significant time lapse occurred between the initial stop and the subsequent search incident to the [defendant's] arrest".[20] Thus, for purposes of assessing the first factor listed in *Brown v. Illinois* (the temporal proximity of the illegal police conduct and the

7.   *Green,* 111 F.3d at 521.

8.   *Id.,* quoting *United States v. Fazio,* 914 F.2d 950, 958 (7th Cir.1990).

9.   *Id.* at 521.

10.   *Id.*

11.   73 Wash.2d 596, 440 P.2d 184, 186 (1968).

12.   262 So.2d 686, 687–88 (Fla.App.1972).

13.   197 Colo. 83, 589 P.2d 939, 941 (1979).

14.   652 S.W.2d 885, 886–87 (Mo.App.1983).

15.   231 Neb. 771, 438 N.W.2d 131, 137 (1989).

16.   201 Ga.App. 792, 412 S.E.2d 850, 852–53 (1991).

17.   809 S.W.2d 940, 947 (Tex.App.1991).

18.   930 S.W.2d 792, 801–03 (Tex.App.1996).

19.   *Hill,* 725 So.2d at 1283.

20.   *Id.* at 1284.

discovery or acquisition of the disputed evidence), the Louisiana court assumed that "any time lapse was negligible".[21]

Nevertheless, after applying the complete "attenuation of taint" analysis announced in *Brown*, the Louisiana court concluded that the connection between the initial illegality (*i.e.*, the improper investigative stop) and the discovery of the pre-existing arrest warrant was sufficiently attenuated to insulate the evidence from the taint of the improper stop. The court found that the improper investigative stop was not flagrant police misconduct—not "particularly egregious", nor done with the purpose of violating the defendant's rights.[22] The court therefore held that "[the] probable cause provided by the outstanding arrest warrants constituted an intervening circumstance under *Brown* which dissipate[d] the taint of [the] initial impermissible encounter."[23]

The Louisiana court recognized that the defendant's strongest argument was that the police never would have learned his name (and thus discovered the pre-existing arrest warrants) if the police had not conducted the illegal investigative stop. But the court held that this connection, by itself, was not sufficient to taint the ensuing arrest and search of Hill's person:

> Undoubtedly, had the officers not learned the defendant's name due to the initial stop, they would not have discovered the outstanding arrest warrants. However, this information is the only link between the initial [investigative] stop and the ultimate discovery of the disputed evidence. To rely on this causal link [as the basis for] suppress[ing] evidence would be directly contrary to the dictates of the United States Supreme Court [because the Court's decisions in *Brown*, *United States v. Ceccolini*,[24] and *Wong Sun v. United*

*States*[25] all reject] a *per se* "but for" causation test ... as a basis for a decision to suppress evidence.... Rather, properly focusing on the dictates of *Brown*, we find that the officers' discovery of the outstanding warrants was a significant intervening event. The defendant's arrest was based upon probable cause not derived from the initial stop and frisk. Therefore, the search incident thereto that uncovered the crack pipe was permissible.

*Hill*, 725 So.2d at 1287.

Several other post–1997 decisions have endorsed this same approach. That is, these courts have held that, despite the unlawfulness of an initial investigative stop, if the only connection between that initial illegality and later-discovered evidence is the disclosure of the defendant's identity and the discovery of a pre-existing warrant for the defendant's arrest, the arrest warrant will be deemed an intervening, untainted justification for an ensuing arrest and search—and, thus, any evidence discovered incident to that arrest will be admissible against the defendant.

See (in chronological order) the Illinois Court of Appeals' decision in *People v. Murray*,[26] the Kansas Supreme Court's decision in *State v. Jones*,[27] the Texas Court of Appeals' decision in *Fletcher v. State*,[28] the Indiana Court of Appeals' decision in *Quinn v. State*,[29] and the Kentucky Court of Appeals' decision in *Hardy v. Commonwealth*.[30]

(There is some contrary authority. A different panel of the Indiana Court of Appeals disagreed with the decision in *Quinn v. State* and issued a contrary ruling in *Sánchez v. State*, 803 N.E.2d 215, 222–23 (Ind.App.2004). The Indiana Supreme Court declined to re-

**21.** *Id.*

**22.** *Id.* at 1287.

**23.** *Id.* at 1285.

**24.** 435 U.S. 268, 276, 98 S.Ct. 1054, 1060, 55 L.Ed.2d 268, 277 (1978).

**25.** 371 U.S. 471, 487, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963).

**26.** 312 Ill.App.3d 685, 245 Ill.Dec. 430, 728 N.E.2d 512, 516–17 (2000).

**27.** 270 Kan. 526, 17 P.3d 359, 360–61 (2001).

**28.** 90 S.W.3d 419, 420–21 (Tex.App.2002).

**29.** 792 N.E.2d 597, 601–02 (Ind.App.2003).

**30.** 149 S.W.3d 433, 435 (Ky.App.2004).

solve this conflict.[31] And a different panel of the Florida Court of Appeals disagreed with the decision in *State v. Foust* and issued a contrary ruling in *Frierson v. State*, 851 So.2d 293, 300 (Fla.App.2003). The *Frierson* court certified that its decision was in conflict with *Foust*, and the Florida Supreme Court has granted review: 870 So.2d 823 (Fla., February 26, 2004).)

*Our decision in Martin v. State, and why we now adopt this different rule of law*

Nearly fifteen years ago, we confronted this same issue in *Martin v. State*, 797 P.2d 1209 (Alaska App.1990). The defendant in *Martin* was subjected either to an investigative stop or an arrest. (The superior court left this issue unresolved.)[32] During this investigative stop or arrest, the police frisked Martin and discovered, on his person, a checkbook and credit cards that ultimately proved to be stolen.[33] A few minutes later, the police ascertained Martin's identity, and then they discovered that there was an outstanding warrant for Martin's arrest on parole violations. The police formally arrested Martin on this parole warrant.[34]

Following his indictment, Martin asked the superior court to suppress the evidence discovered on his person. The superior court ruled that the search was lawful because, even if the officers had lacked proper justification for stopping Martin in the first place, the outstanding arrest warrant provided an independent justification for the arrest and subsequent search.[35]

We reversed the superior court's ruling, holding that the legality of the initial investigative stop or arrest had to be judged solely on the objective information known to the officers at the time.[36] We concluded that since the police had not known about the

arrest warrant when they initially seized Martin, they could not rely on the after-discovered warrant to justify their actions.[37]

Thus, our decision in *Martin* appears to be contrary to the authorities we have just discussed. However, this issue of law—the theory that police reliance on an outstanding arrest warrant can attenuate the taint of a prior illegal stop—does not appear to have been actively litigated in *Martin*. Our published decision contains no discussion of, or even recognition of, the contrary case law on this point of law.[38] Indeed, as we noted in *Martin*, the State's attorney apparently conceded at oral argument that the government should lose this issue.[39]

In the present case, the State has actively litigated this "attenuation of taint" theory, and the superior court relied on this theory when the court upheld the search of McBath's person.

More important, however, is the fact that *Martin* might well have been decided the same way even if we had applied the rule of law discussed in the preceding section of this opinion. As we have explained, Martin was stopped, and then he was searched (a search that yielded the stolen checks and credit cards), and then the police discovered Martin's identity and the existence of the outstanding arrest warrant. In other words, the police did not rely on the arrest warrant to conduct the search—because they did not know about the warrant until after the search was completed. This sequence of events distinguishes *Martin* from the cases we have been discussing—cases in which the sole fruit of the initial unlawful stop is the discovery of the defendant's name, which then leads to the discovery of an outstanding arrest warrant, which then leads to a formal

---

31. 812 N.E.2d 804 (Ind.2004).

32. *Martin,* 797 P.2d at 1211–12, 1214.

33. *Id.* at 1212.

34. *Id.*

35. *Id.* at 1212, 1214.

36. *Id.* at 1214.

37. *Id.*

38. In August 1990, when we issued our decision in *Martin,* the supreme courts of Colorado, Nebraska, and Washington, as well as the courts of appeal of Florida, Missouri, and Texas, had already ruled that the taint of an initial illegal stop could be dissipated by an outstanding arrest warrant. See the court decisions listed on pages 245–46 of this opinion.

39. 797 P.2d at 1214.

arrest and an ensuing search incident to arrest.

For these reasons, we now re-examine the question of whether the existence of an outstanding arrest warrant can attenuate the taint of a prior illegal investigative stop or arrest.

■ When a defendant seeks exclusion of evidence because of police misconduct, the first element of the defendant's proof is to establish a causal connection between the disputed evidence and the complained-of misconduct. Our prior cases declare that there must be a "connection between the right violated and the evidence [to be] excluded".[40]

■ But the exclusionary rule demands more than simply a causal connection. As we noted in *Halberg v. State*,[41] it is error to employ a "but for" test when deciding whether evidence is tainted by prior police misconduct.[42] Rather, the law requires a more probing analysis of the precise relationship between the police misconduct and the challenged evidence.

■ In *Brown v. Illinois*, the Supreme Court set out four factors to guide this analysis. The four *Brown* factors are: (1) the temporal proximity of the illegal police conduct and the discovery or acquisition of the disputed evidence; (2) the presence or absence of intervening circumstances; (3) the purpose or flagrancy of the illegal police conduct; and (4) an evaluation of these three preceding factors in light of the policies underlying the Fourth Amendment and the exclusionary rule.[43]

■ In McBath's case, as in essentially every case in this area, there is little elapsed time between the illegal investigative stop and the discovery of the outstanding arrest warrant. Thus, this first *Brown* factor will almost always favor suppression. But the courts that have considered this question have all but unanimously concluded that, in this kind of situation, this first *Brown* factor is outweighed by the others.

As explained in the preceding section of this opinion, court decisions in this area focus on two main points: (1) what evidence did the police obtain from the initial illegal stop *before* they discovered the outstanding arrest warrant, and (2) whether that initial illegal stop was a manifestation of flagrant police misconduct—*i.e.,* conduct that was obviously illegal, or that was particularly egregious, or that was done for the purpose of abridging the defendant's rights.

■ The following rule emerges from these cases: If, during a non-flagrant but illegal stop, the police learn the defendant's name, and the disclosure of that name leads to the discovery of an outstanding warrant for the defendant's arrest, and the execution of that warrant leads to the discovery of evidence, the existence of the arrest warrant will be deemed an independent intervening circumstance that dissipates the taint of the initial illegal stop vis-à-vis the evidence discovered as a consequence of a search incident to the execution of the arrest warrant.

■ In any case where we are required to decide whether the taint of a Fourth Amendment violation has been "dissipated" or has been "attenuated" by later events, our primary consideration must be our duty to enforce the policy of the exclusionary rule—the policy of deterring the police from engaging in misconduct by imposing a meaningful penalty for that misconduct. As explained by Professor LaFave in his work on search and seizure,

> The notion of the "dissipation of the taint" attempts to [mark] the point at which the detrimental consequences of illegal police action become so attenuated that the de-

---

**40.** *Winfrey v. State,* 78 P.3d 725, 729 (Alaska App.2003), citing *Smith v. State,* 948 P.2d 473, 477 (Alaska 1997), quoting *Erickson v. State,* 507 P.2d 508, 516 (Alaska 1973): "Once a causal connection is established between the proffered evidence and the primary illegality, the evidence must be excluded unless [it] falls within [some exception to the exclusionary rule]".

**41.** 903 P.2d 1090 (Alaska App.1995).

**42.** *Id.* at 1097, citing *Brown v. Illinois,* 422 U.S. at 603, 95 S.Ct. at 2261, and *Hutto v. Ross,* 429 U.S. 28, 30, 97 S.Ct. 202, 203–04, 50 L.Ed.2d 194 (1976).

**43.** *See Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416, 427 (1975).

terrent effect of the exclusionary rule no longer justifies its cost . . . [,] to mark the point of diminishing returns of the deterrence principle.

Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (4th ed.2004), § 11.4(a), Vol. 6, p. 259 (internal quotation marks omitted).[44]

As Professor LaFave also notes, the "question of attenuation inevitably is largely a matter of degree", a question that turns on "the particular facts of each case".[45] Thus, for example, in *Neese v. State*,[46] the Texas Court of Appeals concluded that even though there was a pre-existing warrant for the defendant's arrest, the existence of this warrant was not sufficient to dissipate the taint of a prior illegal stop—because the police exploited the initial illegality in ways other than simply learning the defendant's identity and running a warrants check.

Similarly, in *People v. Jones*,[47] the Colorado Supreme Court (a court that likewise had already adopted the principle that an outstanding arrest warrant can dissipate the taint of a prior illegal stop[48]) held that the evidence against the defendant should be suppressed because the police were not acting in reliance on that arrest warrant when they obtained the contested evidence, but rather were exploiting the initial illegality. (As we observed earlier, this same analysis might be used to justify our decision in *Martin*.)

And the Seventh Circuit—the circuit that issued *United States v. Green*, a decision that we discussed at length in the preceding section of this opinion—has likewise limited its holding that a pre-existing arrest warrant can dissipate the taint of a prior illegal stop. See *United States v. Ienco*, 182 F.3d 517 (7th Cir.1999), where the Seventh Circuit explained and restricted *Green* to instances where the intervening discovery of an arrest warrant truly attenuates the link between the initial illegality and the discovery of the incriminating evidence.

In *Ienco*, the defendant was subjected to an illegal stop and forced to sit in a police vehicle for some thirty minutes before the police discovered that there was pre-existing warrant for his arrest.[49] Later, an incriminating key was found in the police vehicle. The Seventh Circuit held that the existence of the arrest warrant did not dissipate the taint of the illegal stop:

> We [will not apply *Green* ] to the circumstances here, where the "intervening event," the formal arrest, did not sever the causal connection between the initial illegality and the police's discovery of evidence in the van. As noted above, because the key could easily have been left in the police car during the initial illegal detention, the subsequent legal arrest cannot presumptively serve to break the link.

*Ienco*, 182 F.3d at 528.

Moreover, even in cases where the disputed evidence was clearly obtained while the police were executing an outstanding arrest warrant, the flagrance of the police misconduct may still require suppression of the evidence—as, for example, where the police conducted an unjustifiable "dragnet" investigative stop of many people, hoping to find some for whom there were outstanding arrest warrants.

■ With these caveats, we now adopt the rule that a pre-existing arrest warrant can (depending on the circumstances) dissipate or attenuate the taint of a prior illegal stop. Whether the arrest warrant has indeed dissipated the taint of the illegal stop will depend on the facts of the individual case. But in McBath's case, we agree with the superior court that any taint flowing from the police's

---

**44.** Quoting the concurring opinion of Justice Powell in *Brown v. Illinois*, 422 U.S. at 609, 95 S.Ct. at 2264, and Professor Anthony Amsterdam, "Search, Seizure, and Section 2255: A Comment", 112 Univ.Pa.L.Rev. 378, 389 (1964).

**45.** *LaFave*, § 11.4(a), Vol. 6, p. 259, again quoting the concurring opinion of Justice Powell in *Brown v. Illinois*, 422 U.S. at 609, 95 S.Ct. at 2264.

**46.** 930 S.W.2d 792, 801–03 (Tex.App.1996).

**47.** 828 P.2d 797, 799–801 (Colo.1992).

**48.** *See People v. Hillyard*, 197 Colo. 83, 589 P.2d 939, 941 (1979).

**49.** 182 F.3d at 528 n. 9.

arguably illegal initial detention of McBath was dissipated by the officers' discovery of the warrant for McBath's arrest.

We reach this conclusion for two main reasons. First, even if the police acted illegally in detaining McBath until he identified himself, this was not flagrant or egregious misconduct under the circumstances. The police had a valid reason for wishing to know McBath's name (or other information that would allow the police to contact him in the future) before McBath walked off with the arrestee's property. Even assuming that the police had no authority to pursue this aim by temporarily detaining McBath, there is no indication that the officers knowingly overstepped their authority or that their conduct was an egregious misuse of authority.

Second, the only link between this arguably unlawful stop and the eventual discovery of the methamphetamine in McBath's possession was the fact that, during the stop, McBath eventually revealed his name (thus allowing the police to run a warrants check on him). The methamphetamine was discovered only after the police found out about the arrest warrant, executed this warrant, and then conducted a search incident to arrest.

Under these circumstances, we hold that any taint flowing from the arguably illegal investigative stop was too attenuated to affect the admissibility of the methamphetamine.

### Conclusion

We do not resolve the question of whether the police were authorized to detain McBath temporarily when he would not reveal his name before leaving the scene with the arrestee's property. However, even assuming that the police acted illegally in detaining McBath under these circumstances, the officers' discovery of the outstanding warrant for McBath's arrest dissipated the taint of that illegal stop with regard to the methamphetamine found on McBath's person during the ensuing search incident to arrest.

The judgement of the superior court is therefore AFFIRMED.